**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MELISSA JAMES, on behalf of herself and all others similarly situated,** : : : | |
| **Plaintiff,** : : | **Civil Action No. 18-1865 (ES) (SCM)** |
| **v.** : : | **OPINION** |
| **WINDHAM PROFESSIONALS, INC. and JOHN DOES 1-25,** : : : | |
| **Defendant.** : : | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Windham Professionals, Inc.'s ("Windham" or "Defendant") motion to dismiss (D.E. No. 19) Plaintiff Melissa James's ("Plaintiff") Amended Complaint (D.E. No. 10, "Am. Compl.") under Federal Rule of Civil Procedure 12(b)(6). Having considered the parties' submissions,[1] the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court GRANTS Defendant's motion to dismiss.

## I.    Background[2]

Sometime before November 27, 2017, Plaintiff incurred a financial obligation to Viacord constituting a "debt" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*,

---

[1]         (D.E. No. 19-1, Brief in Support of Motion to Dismiss Amended Complaint by Windham Professionals, Inc. ("Def. Mov. Br."); D.E. No. 20, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6) ("Pl. Opp'n Br."); D.E. No. 21, Reply Brief in Further Support of Motion to Dismiss Amended Complaint by Windham Professionals, Inc. ("Def. Reply Br."); D.E. No. 25, Plaintiff's Sur Reply).

[2]         The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

("FDCPA"). (Am. Compl. ¶¶ 15-20).

On or before November 27, 2017, Viacord referred the obligation to Windham, a debt collector under the FDCPA. (*Id*. ¶¶ 9 & 23). Windham delivered to Plaintiff a letter (the "Letter") dated November 27, 2017. (*Id*. ¶ 27). The main body of the Letter stated:

### Validation Notification

The records of Viacord, for the account listed above, indicate that your account is past due.

**Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

If you have any questions you may contact an account representative at 1-855-296-6385.

You may pay by Check or Credit/Debit Card via our online portal at HTTP://WWW.WINDHAMPROS.COM/MAKEAPAYMENT.

Payments also may be sent to us at P.O. Box 1048, Salem, NH 03079. Please do not send cash.

Please send all correspondence to P.O. Box 1048, Salem, NH 03079.

(*Id.*, Ex. A). The Letter's header listed, among other things, Windham's telephone number, office hours, and mailing address. (*Id.*). At its bottom, the Letter contains a cut-off to include with mailing any payment to Windham. (*Id.*).

Plaintiff initiated this putative class action against Windham on February 8, 2018, (*see* D.E. No. 1) and filed her Amended Complaint on May 3, 2018 (*see* Am. Compl.). In the Amended Complaint, Plaintiff alleges that Defendant's letter violated the FDCPA by (i) using false, deceptive, or misleading representations or means in connection with the collection of a debt; and (ii) failing to provide the consumer with a proper notice pursuant to 15 U.S.C. § 1692g(a)(3). (*Id.* ¶ 38). Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. §§ 1692g(a), 1692g(a)(3), 1692g(a)(4), 1692e(2)(A), and 1692e(10) by using the phrase "Validation Notification" in the Letter. (*See id.* ¶¶ 42, 44-50 & 55-61). Plaintiff contends that this phrase

falsely represented that the debt had been deemed valid and failed to effectively inform Plaintiff of her rights to dispute the debt, and how to do so.  (*See id.*).  Plaintiff also alleges that Defendants allegedly further violated 15 U.S.C. §§ 1692g(a), 1692g(a)(3), 1692g(a)(4), and 1692e(10) in the Letter by stating, "If you have any questions you may contact an account representative at 1-855-296-6385."  (*See id.* ¶¶ 43, 51-54 & 62-67).  Plaintiff contends that this statement overshadows or contradicts the Third Circuit requirement that a dispute of a debt must be in writing to be effective.  (*See id.*).

## II.   Legal Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quotation marks omitted).

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quotation marks and brackets omitted).  But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic

documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (quotation marks, brackets, and citation omitted).

## III.    Discussion

### A.    The FDCPA

The FDCPA is a remedial statute geared towards eliminating abusive practices by debt collectors.  *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (describing the FDCPA's legislative history and general application).  Congress enacted the Act "to eliminate abusive debt collection practices which contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (quotation marks omitted).  Moreover, Congress included the debt validation provisions of 15 U.S.C. § 1692g to guarantee that consumers would receive adequate notice of their rights under the law.  *Id.*  The Third Circuit has stated that, "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect" to the purposes for which it was enacted.  *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer; (2) the defendant is a debt collector; (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it; and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *St. Pierre v. Retrieval-Masters Creditors Bureau,*

*Inc.*, 898 F.3d 351, 358 (3d Cir. 2018) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

"Paragraphs 3 through 5 of § 1692g(a) contain the validation notice—the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." *Caprio*, 709 F.3d at 147 (quoting *Wilson*, 225 F.3d at 353-54). "[I]n order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354; *see also Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) ("[S]tatutory notice must not only explicate a debtor's rights; it must do so effectively."). Therefore, a validation notice "must not be overshadowed or contradicted by other messages or notices from the debt collector," such that the debtor could be misled into foregoing a statutory right, and a debt collection letter with content that overshadows or contradicts its validation notice violates the FDCPA. *Laniado v. Certified Credit & Collection Bureau*, 705 F. App'x 89 (3d Cir. 2017). A validation notice is overshadowed or contradicted by the debt collector's communications when those communications "would make the least sophisticated debtor uncertain as to her rights."[3] *Wilson*, 225 F.3d at 354 (quoting *Russel v. Equifax A.R.S.*, 74 F.3d 30, 35 (3d Cir. 2000)). Courts evaluate both the "substance" and "form" of debt collector communications in determining whether they would confuse or mislead the least sophisticated debtor as to her rights. *See, e.g.*, *Caprio*, 709 F.3d at 151-55 (analyzing the substance and form of a collection letter to hold that the letter overshadowed and contradicted the validation notice).

Finally, the least sophisticated debtor standard is "less demanding than one that inquires

---

[3]    Whether a debt collector's communications overshadow or contradict a validation notice is a question of law. *Wilson*, 225 F.3d at 353 n.2.

whether a particular debt collection communication would mislead or deceive a reasonable debtor" because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor.  *See Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008).  This lower standard comports with the FDCPA's basic purpose to protect "all consumers, the gullible as well as the shrewd," from abusive debt collection practices.  *Brown*, 464 F.3d at 454.  However, while the least sophisticated debtor standard "protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."  *Wilson*, 225 F.3d at 354-55 (quotation marks omitted); *see also Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011).

### B.    The Parties' Arguments

Defendant argues that its use of the phrase "Validation Notification" and the statement "[i]f you have any questions you may contact an account representative at 1-855-296-6385" does not overshadow or contradict the validation notice.  (*See generally* Def. Mov. Br.).  Defendant argues that the use does not does not misrepresent the character, amount, or legal status of the debt.  (*See generally id.*).  Defendant further argues that the use does not constitute a false representation or deceptive means to collect the debt.  (*See generally id.*).  Therefore, Defendant contends that it did not violate the FDCPA.  (*See generally id.*).

More specifically, Defendant argues that the language of the Letter's validation notice is nearly identical to the applicable FDCPA statutory text.  (*Id*. at 3-5).  Defendant argues that the substance of the first two sentences of the validation notice clearly conveys that any dispute needs to be in writing.  (*Id*. at 12).  Regarding form, Defendant argues that the validation notice's

placement as the second paragraph on the Letter's front side, its emphasis in bold, and its font that is either the same or slightly larger than the font in other sections, make the validation notice the most prominent part of the Letter. (*See id.* at 11-12).

Defendant argues that its use of the phrase "Validation Notification" is a standard of care. (*Id.* at 14). Defendant asserts that the phrase "Validation Notice" is copied and pasted directly from § 1692g, which is titled "Validation of debts." (*Id.*). Defendant further asserts that courts also regularly use the phrase "Validation Notice" to describe the process in which a consumer is provided her rights to dispute a debt under § 1692g. (*Id.* at 16). When the Letter is read in its entirety, Defendant argues, the phrase clearly "refers to a debtor's right to dispute the legitimacy of the debt and to obtain documents relating to the debt." (*Id.* at 15). Regarding form, Defendant argues that "Validation Notification" is in regular font while the paragraph explaining the validation process is in bold. (*Id.* at 15). Defendant also argues that the paragraph explaining the validation process is located on the same page as, and almost directly below, the phrase "Validation Notification." (*Id.*).

Regarding the statement "[i]f you have any questions you may contact an account representative at 1-855-296-6385," Defendant argues that the statement "says nothing about disputing a debt over the phone" and therefore does not overshadow or contradict the written dispute language. (*See id.* at 12-13). Regarding form, Defendant argues that the statement is not bolded and is located after the bolded paragraph explaining the validation process. (*Id.*). Lastly, Defendant argues that because it has not violated § 1692g, Plaintiff's § 1692e(10) claim also fails, as a § 1692g analysis is dispositive of a § 1692e(10) claim when the 1692e(10) claim is predicated on the same conduct. (*Id.* at 16-17).

Plaintiff counters that she has pleaded viable FDCPA claims. (*See generally* Pl. Opp'n

Br.).  Regarding the phrase "Validation Notification," Plaintiff contends that this phrase falsely represents that the debt already had been deemed valid and makes the least sophisticated consumer uncertain about whether the debt could still be disputed.  (*Id.* at 8 & 17).  Plaintiff argues with respect to form that "Validation Notification" is on the front of the Letter, is in the center and near the top of the page, is in a larger font than other text, and "refer[s] to the entire letter as a whole."  (*Id.* at 3).

Regarding "[i]f you have any questions you may contact an account representative at 1-855-296-6385," Plaintiff argues that this statement overshadows or contradicts the Third Circuit requirement that a dispute of a debt must be in writing to be effective.  (*See id.* at 8-14). Focusing on the statement's inclusion of the words "*any* questions," Plaintiff argues that the statement instructs and encourages the least sophisticated consumer to call and discuss questions regarding the debt.  (*Id.* at 8-10).  Plaintiff accordingly argues that the least sophisticated consumer having questions concerning "the validity, accuracy and/or who is actually liable to pay the debt" would believe that she could call Defendant to dispute the debt.  (*Id.* at 9). Regarding the Letter's form, Plaintiff avers that call language is present both before and after the validation notice.  (*Id.* at 13).  Plaintiff avers that the statement-in-question is not separated physically from the main body of the Letter or validation notice.  (*See id.* at 13).  Plaintiff also avers that Letter provides office hours during which the consumer can call, making the least sophisticated debtor further uncertain as to her rights on how to dispute the debt.  (*See id.*). Finally, Plaintiff argues that because she has pleaded a viable § 1692g claim, she has pleaded a viable § 1692e(10) claim.  (*Id.* at 15-17).

In reply, Defendant argues that the Letter with its "Validation Notice" language does not imply that debt has already been deemed valid.  (Def. Reply Br. at 3).  Defendant argues with

respect to form that the phrase "Validation Notification" is in only slightly larger font than the Letter's validation notice.  (*Id.*).  Regarding the statement "[i]f you have any questions you may contact an account representative at 1-855-296-6385," Defendant contends that the statement "merely advises that one can call with 'any questions'" and does not contain language suggesting that one can call to dispute a debt.  (*See id.* at 5-6).  Regarding the phone number and office hours in the Letter's header, Defendant contends that the header also provides Windham's mailing address in the same font.  (*Id.* at 2).  Defendant also contends that words "mailing address" are bolded and underlined, whereas the telephone number is not.  (*Id.*).  Moreover, Defendant contends that the Letter lists Windham's mailing address four times but the telephone number only twice.  (*Id.*).

 **C.**  **Analysis**

  ***i.***   ***The requirement that disputes must be in writing***

 Defendant's arguments on this point are persuasive.  The Court holds that neither the statement "[i]f you have any questions you may contact an account representative at 1-855-296-6385" nor any other aspect of the Letter which Plaintiff raised overshadows or contradicts the Third Circuit requirement that a debt dispute must be in writing to be effective.

 This case is distinguishable from the two most relevant Third Circuit cases cited by Plaintiff: *Caprio* and *Laniado*.  *See Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142 (3d Cir. 2013); *Laniado v. Certified Credit & Collection Bureau*, 705 F. App'x 89 (3d Cir. 2017).  In *Caprio*, the Third Circuit held that the language "[i]f we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800-984-9115** or write us at the above address" overshadowed and contradicted the validation notice. 709 F.3d at 151.  While "acknowledg[ing] that this 'please call' language could be read as nothing more than a mere

invitation" to communicate, the *Caprio* court observed that that language "did more than merely ask [the plaintiff] to call or write if 'we can answer any questions.'" *Id.* at 151-52. "At the very least, the 'least sophisticated debtor' could reasonably 'feel' that he or she 'do[es] not owe this amount' if he or she actually disputed the debt and its validity. If so, this 'please call' language basically instructed to call or write in order to dispute the debt itself." *Id.* at 151. Consequently, the least sophisticated debtor would be "uncertain as to her rights" because she could reasonably read the collection letter to mean that she could dispute the debt with a telephone call. *Id.* at 151-52. The *Caprio* court found that the form of the debt collection letter compounded this deception. *Id.* "[P]lease call" and the telephone number were bolded, unlike the phrase "write us at the above address" or the validation notice. *Id.* Further, the debt collector's mailing address appeared only in the letterhead and in smaller font than the telephone number. *Id.* Finally, the validation notice was on the backside of the debt collection letter. *Id.*

Similarly, in *Laniado*, the Third Circuit analyzed the language "SHOULD THERE BE ANY DISCREPANY PLEASE CALL TOLL FREE 800-253-2920 OR FOR OUR 24 HOUR AUTOMATED CUSTOMER SERVICE CALL 800-354-4744" in a debt collection letter. *Laniado*, 705 F. App'x at 90. The Court held that this language was substantively indistinguishable from *Caprio*. *Id.* "The least sophisticated debtor could reasonably believe *there was a discrepancy* if he or she actually disputed the debt and its validity," and "if so, this 'please call' language basically instructed such a debtor to call to dispute the debt itself," making the least sophisticated debtor uncertain as to her rights. *Id.* (cleaned up and emphasis added). The *Laniado* court also held that the form of the letter weighed in favor of finding the validation notice overshadowed or contradicted, as the mailing address appeared only in the letterhead but telephone numbers were referenced a total of five times. *Id.* at 91.

Here, the statement at issue—"[i]f you have any questions you may contact an account representative at 1-855-296-6385"—does not contain language that the least sophisticated debtor could reasonably interpret as an instruction to call the telephone number to dispute the debt, unlike the statements in *Caprio* and *Laniado*.  (*See* Am. Compl., Ex. A); *Caprio*, 709 F.3d at 151-52; *Laniado*, 705 F. App'x at 90.  The conditional clause "[i]f you have any questions" does not explicitly reference a debt dispute like the clause "if you feel you do not owe this amount" in *Caprio*.  *See* 709 F.3d at 151-52.  Nor is the clause *suggestive* of a debt dispute like the language "should there be *any discrepancy*" in *Laniado*.  *See* 705 F. App'x at 90 (emphasis added). Further, unlike the statements at issue in *Caprio* and *Laniado*, the statement here does not *instruct* the debtor to call; it simply provides the debtor with the option to call.  *Compare* (Am. Compl., Ex. A ("you may contact")), *with Caprio*, 709 F.3d at 151-52 ("please call"), *and Laniado*, 705 F. App'x at 90 (same).  "If you have any questions you may contact an account representative at 1-855-296-6385," would "be read [by the least sophisticated debtor] as nothing more than a mere invitation" to communicate.  *See Caprio*, 709 F.3d at 151.

The form of the Letter puts to rest any remaining notion that the statement here overshadows or contradicts the validation notice.  The validation notice is on the front page and in a relatively prominent position, whereas the validation notice in *Caprio* was on the back of the letter.  *See id.* at 151-52.  The statement at issue here, unlike in *Caprio*, is positioned after the validation notice, is un-bolded, and is not formatted in a way to draw attention to it.  *See id.*  The debt collector's mailing address is listed in the letterhead and twice in the main body of the letter. (*See* Am. Compl., Ex. A).  In contrast, the debt collectors' mailing addresses in *Caprio* and *Laniado* were listed only in the letterhead, and in *Laniado*, the total references to telephone numbers outnumbered the single reference to the mailing address by a considerable margin.  *See*

*Caprio*, 709 F.3d at 151-52; *Laniado*, 705 F. App'x at 90.  Finally, although the letterhead contains a telephone number, the letterhead also contains the instruction *"[p]lease contact our office to make payment arrangements*," constraining such calls to only making "payment arrangements."  (*See* Am. Compl., Ex. A).  Also, the instruction immediately follows the telephone number, and "Mailing Address" is bolded and underlined.  (*See id.*).  The presence of the telephone number and office hours in the letterhead therefore does not tip form in Plaintiff's favor on the issue of the statement "[i]f you have any questions you may contact an account representative at 1-855-296-6385."

Persuasive authority examining language similar to Windham's Letter further supports this Court's holding.  *See, e.g.*, *Reizner v. Nat'l Recoveries, Inc.*, No. 17-2572, 2018 WL 2045992, at *9-10 (D.N.J. May 2, 2018) (ruling that "[y]ou may write to us at the address listed below or telephone us at the number provided below" did not overshadow or contradict the validation notice); *Riccio v. Sentry Credit, Inc.*, No. 17-1773, 2018 WL 638748, at *4-6 (D.N.J. Jan. 31, 2018) (holding that the validation notice was not overshadowed or contradicted where the debt collection letter stated "[c]ontact us with one of our convenient options" and was followed by a display box containing an address, a telephone number, and a website address).

### ii.      The phrase "Validation Notification"

As discussed above, Plaintiff contends that the phrase "Validation Notification," falsely represents that the debt already had been deemed valid, and therefore violates 15 U.S.C. §§ 1692g(a), 1692g(a)(3), 1692g(a)(4), 1692e(2)(A), and 1692e(10).  (Am. Compl. ¶¶ 42, 44-50 & 55-61; Pl. Opp'n Br. at 17).  But Defendant's arguments on this issue are also persuasive.  The Court holds that the phrase "Validation Notification" as used in the Letter does not overshadow or contradict the validation notice and does not misrepresent the character, amount, or legal

status of the debt.

"Although established to ease the lot of the naive, the [least sophisticated debtor] standard does not go so far as to provide solace to the willfully blind or non-observant.  Even the least sophisticated debtor is bound to read collection notices in their entirety."  *Campuzano-Burgos*, 550 F.3d at 299.  Almost immediately after the disputed phrase, the Letter provides the validation notice in language substantially mirroring the statute.  (*See* Am. Compl., Ex. A).  The Letter first states:

> **Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.**

(*Id.*).  The FDCPA requires a written notice that:

> unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector . . . .

15 U.S.C. § 1692g(a)(3).  The Letter then states:

> **If you notify this office in writing within thirty (30) days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification.**

(Am. Compl., Ex. A).  The relevant FDCPA provision requires a written disclosure that:

> if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector. . . .

15 U.S.C. § 1692g(a)(4).  Finally, the Letter states:

> **If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor.**

(Am. Compl., Ex. A).  The FDCPA requires a written disclosure that:

> upon the consumer's written request within the thirty-day period,
> the debt collector will provide the consumer with the name and
> address of the original creditor, if different from the current
> creditor.

15 U.S.C. § 1692g(a)(4).

Thus, shortly after the phrase "Validation Notification," the Letter explicitly discusses the debtor disputing the validity of the debt and actions that she may take after receiving the Letter to preserve her rights. (*See* Am. Compl., Ex. A). In light of this, the least sophisticated debtor *reading the Letter in its entirety* could not *reasonably* interpret the phrase to mean either (i) that the debt already has been deemed valid or (ii) "[t]hat the debt has already been determined to be valid by Viacord, but not yet by Windham." (*See* Pl. Opp'n Br. at 16); *Campuzano-Burgos*, 550 F.3d at 299 (explaining that the least sophisticated consumer standard "presum[es] a basic level of understanding and willingness to read with care on the part of the recipient"); *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008) ("A debt collection letter is deceptive where it can be *reasonably* read to have two or more different meanings, one of which is inaccurate.") (emphasis added and quotation marks and citation omitted). Indeed, as Defendant articulates, even the least sophisticated debtor would understand "Validation Notification" in the context of this Letter to mean "a debtor's right to dispute the legitimacy of the debt and to obtain documents relating to the debt." (*See* Def. Mov. Br. at 15). Plaintiff's arguments on the phrase "Validation Notification" do not reflect a presumption of "a basic level of understanding and willingness to read with care on the part of the recipient" and "ignore [the] rational characteristics of even the least sophisticated debtor." *See Campuzano-Burgos*, 550 F.3d at 299.

For these reasons, the Court rules that Defendant's use of the phrase "Validation Notification" in the Letter does not violate 15 U.S.C. §§ 1692g(a), 1692g(a)(3), 1692g(a)(4), or 1692e(2)(A).

### iii.     15 U.S.C. § 1692e(10)

Plaintiff does not argue that her 15 U.S.C. § 1692e(10) claim is based on any different ground than her § 1692g claims or 15 U.S.C. § 1692e(2)(A) claim.  (*See, e.g.*, Am. Compl. ¶¶ 60 & 62; Pl. Opp'n Br. at 15-17).   Consequently, the Court dismisses Plaintiff's 15 U.S.C. § 1692e(10) claim for the same reasons as stated for the 15 U.S.C. § 1692g claims and 15 U.S.C. § 1692e(2)(A) claim.  *See, e.g.*, *Caprio*, 709 F.3d at 155. ("Because we have concluded that the District Court committed reversible error by granting judgment on the pleadings as to the § 1692g claim, we must reach the same conclusion with respect to the claim brought under § 1692e(10)."); *Cruz v. Fin. Recoveries*, No. 15-0753, 2016 WL 3545322, at *4 (D.N.J. June 28, 2016) ("Because Plaintiff cannot prevail on her claim under Section 1692g, Plaintiff likewise cannot proceed under Section 1692e(10)."); *Reizner*, 2018 WL 2045992, at *10 ("The Court finds that the letter does not violate Section 1692g(a) and, as result, it also does not violate Section 1692e(10).").

## IV.     CONCLUSION

For the foregoing reasons, the Court holds that Plaintiff has not stated a claim upon which relief can be granted, and the Court GRANTS Defendant's motion to dismiss.  Because Plaintiff has amended once and her claims are based solely on the Letter, permitting further amendment would be futile.   *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Accordingly, the dismissal is with *prejudice*.

An appropriate Order accompanies this Opinion.

*s/Esther Salas*_____
**Esther Salas, U.S.D.J.**
